UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 17-CR-10179-PBS |
| | ) | 19-CR-10384-PBS |
| | ) | |
| LYNDON SCOTT | ) | |

## **DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Lyndon Scott stands before this Court having pleaded guilty to a three count indictment charging Possession with Intent to Distribute Cocaine Base, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); Felon in Possession of a Firearm and Ammunition, 18 U.S.C. § 922(g); Possession of a Firearm in Furtherance of a Drug Trafficking Offense, 18 U.S.C. §924(c).

We ask that the Court impose a sentence that totals 70 months, with supervised release to follow. This sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. United States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008).

This sentence represents a nearly five-fold increase above Mr. Scott's prior federal sentence. That increase is appropriate because of the serious nature of the crime, particularly the possession of a firearm, and because the offenses were committed while Mr. Scott was on supervised release. However, despite those aggravating factors, as will be described in greater detail, a sentence of 70 months is sufficient punishment in light of Mr. Scott's personal characteristics.

I.  **Guideline Calculation and Structure of Sentence**

   a.  **Guideline Calculation**

We do not have a mathematical objection to the guidelines as calculated by the Probation Department.

The Court should, however, take into consideration the disparity in federal cocaine sentencing and use this as an opportunity to apply the principals of the EQUAL act.[1] While not yet law, the EQUAL act would eliminate the disparity between cocaine and cocaine base offenses, a concept that has been encouraged by criminal justice advocates for decades. If applied here, the Base Offense Level for the weight of the narcotic attributable to Mr. Scott in this case, 28 – 112 grams, would be 12. USSG §2D1.1(c)(14).

Assessed alone, the guideline range for the controlled substance offense would then be **21-27 months** for a person like Mr. Scott who falls into Criminal History Category V. Assessed in connection with the firearm offense and subject to the grouping rules, the §922(g) offense would become the lead offense, with a likely adjusted offense level of 17 (Base Offense Level 20 USSG §2K2.1(a)(4)(A)) and Criminal History Category V would generate a guideline range of **46-57 months; with 60 months consecutive for §924(C)**. Either analysis places Mr. Scott significantly below the 70-87 month guideline range found when the Base Offense Level is inflated because the controlled substance was crack cocaine instead of powder cocaine.

On June 22, 2021, the Department of Justice issued a statement "Examining Federal Sentencing for Crack and Powder Cocaine." This statement sets forth the race implications of the disparity, both in terms of enforcement priorities, impact in the community and the harsher penalties that fall upon Black men specifically. "When 77.1% of crack convictions in 2020

---

[1] S.79, 117th Congress. https://www.congress.gov/bill/117th-congress/senate-bill/79/text

impact only members of a particular race or ethnicity – in this case, Black people, who are thus disproportionately subject to the persisting sentencing disparity – that racial disparity greatly undermines fairness. DOJ Statement, page 2. The Statement also accounts for aggravating factors, such as recidivism (which is applied in Mr. Scott's Criminal History Category, V) and possession of a firearm. Notably the possession of a firearm is also more likely, according to the Department of Justice, in street retail sales, as is the case for Mr. Scott. That aggravating factor drives up Mr. Scott's guideline range by applying the 5 year mandatory minimum sentence pursuant to § 924(C). There is no suggestion from the Government that Mr. Scott possessed the firearm in the Jeep for any reason other than the need to protect or further the drug distribution. Therefore there is no independent reason to punish the possession of the firearm separately for its inherent danger, when that danger is only linked to its use in the distribution of narcotics. "We recognize that data suggest that weapons involvement and violence in the commission of cocaine-related offenses are generally higher in crack versus powder cases. This is largely because crack cocaine is sold at the retail-level, and violence is more often associated with retail sales." DOJ Statement, Page 7.

      Here, we ask the Court to put the framework of this policy change into action and use this as an opportunity to vary downward from the guideline range for Mr. Scott.

      **b. Sentence Structure**

      Mr. Scott was under a term of supervised release in case number 17-CR-10179 at the time he committed the new offense. He admits those violations and is prepared to be sentenced for them. We propose that the court impose a sentence of 10 months, concurrent with the sentence imposed on Counts 1& 2 of 19-CR-10384 and then terminate the term of supervision associated with that docket number.

This is a fair outcome because Mr. Scott's guideline range on the supervised release case is increased from 5-11 months to 18-24 months because of the new offense, which is a Class A violation. Mr. Scott's Criminal History score is also increased by 2 points for the commission of the offense while on a term of supervision.

On case number 19-CR-10384, we ask the Court to impose a sentence of 10 months on Counts 1&2, to be served concurrent with a 10 month sentence in 17-CR-10179, and 60 months of imprisonment to run consecutively on Count 3.

## II.     Personal Circumstances

Mr. Scott has, once again, made choices that will put his life on hold. His son, London, who just started school, is old enough now to ask where he is and question why his father is not present in their home the way he once was. Mr. Scott and his partner (London's mother) Iman Hackett have a warm and loving co-parenting relationship, yet London feel's his father's absence acutely. Mr. Scott has always been committed that his son would grow up with a father who was not disrespectful towards his mother and did not bring addiction into the household. He has upheld much of that promise, but his absence has made bonding with London and being present for the little parts of day to day life, like the first day of school, impossible.

As Mr. Scott's mother aptly described in her comments to the Probation Department, Mr. Scott struggled tremendously after his release from federal prison. PSR ¶P 60; 74. His criminal record was an active deterrent from job opportunities and after several attempts, he simply gave up and went back to making money the easy way.

The letters of support we attach to this memorandum can show the Court who Mr. Scott is outside of his choices to sell drugs. He has much to offer his community and we believe a sentence of longer than 70 months exceeds what would be a fair punishment in this case.

### III.     The "need for the sentence imposed" and other factors do not justify the government's recommendation.

The sentencing statute lists a variety of factors the Court must consider in evaluating the "need for the sentence imposed." 18 U.S.C. § 3553(a)(2). These include the seriousness of the offense, respect for the law, and just punishment. The guideline sentence of an aggregate of at least 130 months is far too severe to serve the goals of sentencing. A sentence that severe takes a young father away from his son and could permanently damage that relationship.

The Court is also directed to consider deterrence when imposing punishment. 18 U.S.C. § 3553(a)(2)(B). The government may argue that deterrence requires that the Court impose a guideline sentence. Yet the Court should consider that the National Institute of Justice, a branch of the Department of Justice, has found that "increasing the severity of punishment does little to deter crime." *Five Things About Deterrence*, National Institute of Justice, May 2016.[2] This finding is based on research that shows that more severe punishments do not "chasten" offenders, that prison may exacerbate recidivism, and that certainty of punishment has a greater impact than severity. Id. Indeed, the deterrent effect is more likely to be borne out on the term of supervised release, where his success or failure is entirely in his hands, and where any new criminal conduct will be swiftly addressed and punished.

Instead, in evaluating the "need for the sentence imposed" is to provide the defendant with training, education, and treatment.18 U.S.C. § 3553(a)(2)(D), the Court should impose a shorter sentence so that Mr. Scott can utilize the skills he can learn in prison. He can continue the college education courses he began during his previous term of incarceration. He would also benefit from the vocational training offered within the Bureau of Prisons to further his goal of achieving a CDL license when he is released. PSR ¶ 77.  While the Bureau of Prisons can meet

---

[2] https://nij.ojp.gov/topics/articles/five-things-about-deterrence

these needs, they will have little practical benefit if they are coupled with a prison sentence as enormous as the guidelines suggest and society will not benefit from Mr. Scott's participation in these programs if he returns at an age where he would have no prospects or hope of building a meaningful life.

### Conclusion

We ask that the Court consider all of the above factors and sentence Mr. Lyndon Scott in a manner that both addresses the serious nature of the charge but allows for him to have a future outside of a prison cell. We believe a sentence of 70 months, with supervised release to follow, accomplishes the goals of sentencing and results in a fair outcome for both Mr. Scott and his community.

LYNDON SCOTT
By his attorney

*/s/ Jessica P. Thrall*
Jessica P. Thrall
#670412
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617 – 223- 8061

CERTIFICATE OF SERVICE

      I, Jessica P. Thrall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 4, 2021.

                                                  */s/ Jessica P. Thrall*
                                                  Jessica P. Thrall