UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 19-10384-PBS |
| | ) | 17-10179-PBS |
| LYNDON SCOTT, | ) | |
|     Defendant | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

On May 20, 2021, LYNDON SCOTT pleaded guilty to a three count indictment charging him with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count One), being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count Two), and possession of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Three). The final Pre-Sentence Report prepared by the United States Probation office, dated October 1, 2021 ("PSR"), concluded that SCOTT's total offense level ("TOL") was 21, his criminal history category ("CHC") was V, and his guideline sentencing range ("GSR") was 70-87 months in prison. SCOTT also faced a mandatory five year from and after sentence for possessing the firearm during the drug trafficking offense.

For the reasons set out below, the government recommends a sentence of 70 months in prison on Counts One and Two and the required 60 month from and after sentence on Count Three for a total recommended sentence of 130 months in prison. This sentence is within the range contemplated by the parties in the plea agreement filed in this case (Docket No. 85).

At the time SCOTT committed these offenses, he was still on supervised release from an earlier conviction before this Court for distribution of cocaine base within a public housing development. See United States v. Scott, Cr. No. 17-10179-PBS. The government recommends

the statutory maximum sentence of three years in prison, to be served concurrently with the sentence imposed on the new offense, with no additional supervision to follow.

The last time SCOTT was before the Court for sentencing, the government's sentencing memorandum set forth, in detail, the violence associated with drug trafficking in and around the Orchard Park housing development in Roxbury, the degree to which members of the Orchard Park gang control drug dealing in and around the development, SCOTT's membership in the Orchard Park gang, and his sordid criminal history. See United States v. Scott, Cr. No. 17-10179-PBS (Docket No. 41). At age 20, SOCTT was arrested with other Orchard Park gang members during a traffic stop in possession of a loaded handgun. SCOTT received a five year prison sentence but all but 8 months of that sentence was suspended. While on probation in Rhode Island, and within 6 months of his release from prison on this first gun charge, SCOTT was arrested in possession of a second loaded firearm after a foot chase with Boston Police officers inside the Orchard Park housing development. SCOTT was sentenced to 3.5 years in state prison, violated his parole, and served another year in prison for that offense. Two weeks after he finished his probation on his second illegal firearm case, SCOTT was arrested in possession of crack cocaine, a digital scale, and over $1000 in cash. While on pre-trial release from the Roxbury District Court on that case, SCOTT sold crack cocaine to a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) cooperating witness inside Orchard Park. During the sale, SCOTT bragged to the CW that his crack cocaine was "great" and during and after the sale SCOTT offered to distribute more crack cocaine to the CW. This Court sentenced SCOTT to 15 months in prison (a sentence within the correctly calculated guidelines based on the quantity of cocaine distributed), and placed him on supervised release for six years. See Government's 2018 Sentencing Memorandum, Docket No. 41, at pp. 11-12; see also PSR, ¶¶ 35-37.

SCOTT lasted less than a year on federal supervised release before agents again captured him engaged in drug sales around Orchard Park. On June 7, 2019 and August 21, 2019, SCOTT drove DASHAWN MATTHEWS, another Orchard Park gang member, to crack cocaine and fentanyl sales with an ATF undercover police officer in or near the Orchard Park development.[1] SCOTT drove a Jeep Liberty sports utility vehicle registered to his mother to these sales. On September 30, 2019, ATF agents and Boston Police drug control unit officers executed a series of search warrants for SCOTT's person, apartment, and Jeep. Officers stopped SCOTT driving the Jeep Liberty. From SCOTT, officers seized 20 grams of crack cocaine. From the center console of the Jeep Liberty, officers seized a Taurus 9 millimeter pistol loaded with twelve rounds of ammunition in a high-capacity feeding device, over $600 in cash, and three cell phones.



---

[1] MATTHEWS was recently sentenced for those sales. See United States v. Dashawn Matthews, Cr. No. 20-10259-WGY (30 months in prison and three years of supervised release where Matthews was in criminal history category I).

From the bedroom in SCOTT's apartment, officers seized a black camouflage backpack containing an identification card in SCOTT's name, sandwich bags commonly used to package drugs for street-level sale, plates with suspected cocaine residue, two knives and a spoon with residue, a Pyrex measuring cup, two knives and spoons with residue, a digital scale, and eight suboxone strips. PSR, ¶¶ 10-15.

The government's 2018 sentencing memorandum spent a great deal of time discussing how the day-in, day-out drug trafficking activity in Orchard Park and the violence endemic to the drug trade negatively impacts the lives of so many residents of the development. Those kind of general deterrence considerations are always present and significant and remain so here, but at a certain point – and SCOTT is now at this point – the only sentencing factors that matter are the need to specifically deter SCOTT from future serious criminal conduct and the need to protect the public from him. See 18 U.S.C. § 3553(a). The record conclusively establishes that SCOTT will not stop trafficking cocaine and fentanyl to the residents of Orchard Park. In 2017, SCOTT sold crack cocaine to an ATF cooperating witness in Orchard Park. While on supervised release, SCOTT drove MATTHEWS to distribute crack cocaine and fentanyl to an ATF undercover police officer near Orchard Park. Also, SCOTT's sold fentanyl to a Boston Police confidential informant whose controlled purchases formed the basis of the probable cause for the search warrant. PSR, ¶ 9 and n.1. See United States v. Blaso, 2018 WL 227863 at *3 (3d Cir.2008) (affirming sentence that recognized the "catastrophic consequences of crack dealing"); United States v. Paredes, Cr. No. 19-40049-TSH, Docket No. 169 ("Fentanyl is extremely dangerous, often fatal to those who take it, and in the Court's view is the most harmful illegal drug that one can distribute").

The record also amply demonstrates that SCOTT has never met a court order he had any intention of following, a factor which militates in favor of the government's proposed sentence.

4

See United States v. Wallace, 573 F.3d 82, 96 (1 Cit.2009) (committing a crime at a time when "one would expect a careful abidance to the law . . . demonstrated [defendant's] propensity for criminal behavior"); United States v. Hernandez, 896 F.3d 642, 645 (1 Cir.1990) ("a defendant undermines the integrity of the criminal justice system when he commits a crime while . . . under its supervision and control").

Most significantly, this is SCOTT's third conviction for illegal possession of firearms:

> Firearms are instruments designed for the use of physical force, whether legal or illegal. Apart from use for target practice or sport, firearms have no functional utility other than to threaten or cause harm to persons, animals, or property. Firearms are therefore generally regarded as essential equipment of police and military forces, designed to enable them to use violent force (and the threat thereof) for military and peacekeeping purposes. By the same token, firearms are conventionally regarded as essential equipment of criminals engaged in violent crime. While it is possible to commit violent crimes without possession or use of a gun . . . guns are without doubt the most potent and efficient instruments of violent crime. For that reason, they are undoubtedly the instrument of choice among the vast majority of violent criminals . . . [w]ithout possessing a gun, one cannot use a gun for the commission of a violent act; with a gun, one can. Possession of a gun increases one's ability to inflict harm on others.

United States v. Silva, 133 F.Supp.2d 104, 111 (D.Mass.2001), citing United States v. Dillard, 214 F.3d 88, 93 (2d Cir.2000). See United States v. Politano, 522 F.3d 69, 72 (1st Cir.2008) (enhancing sentence based on "epidemic of handgun violence in communities within this district" which "directly facilitate" crimes of violence and "indirectly facilitate" drug trafficking offenses).

Over the years, various courts have tried to modify SCOTT's criminal conduct with probation, suspended sentences, and supervised release. SCOTT ignored every warning sign, violated every court order, and willfully and intentionally continued to poison the residents of a Roxbury housing development while armed with a high-capacity firearm. All that is left to do is to impose the sentence which SCOTT, through his actions, has chosen for himself.

For the reasons set forth above, the government respectfully requests that the Court sentence SCOTT to 130 months in prison, along the lines set forth above, and three years of supervised release.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   /s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 7, 2021.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney